**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | 3:23-CV-430-MMD-CLB |
| Plaintiff, | **Default Judgment of Forfeiture and Final Judgment of Forfeiture** |
| v. | |
| $163,500 in U.S. Currency, | |
| Defendant. | |

## I. FACTS

On January 24, 2023, Kite Issac Finds the Feather (Kite) and Deandre Tyron Dantzler were driving westbound on U.S. Interstate 80 east of the Boomtown exit in Reno.

A Washoe County Sheriff's Office officer, Sgt. Nemeth, who was also traveling westbound in his patrol vehicle, noticed a vehicle traveling in front of him that had heavy road grime on the rear of the vehicle, causing its license plate to be illegible. The vehicle was a gray Chrysler Voyager van.

Sgt. Nemeth initiated a traffic stop near U.S. Interstate 80-mile marker four for an obstructed license plate in violation of NRS § 482.275, which states that "[e]very license plate must at all times be […] in a place and position to be clearly visible, and must be maintained free from foreign materials and in a condition to be clearly legible."

Sgt. Nemeth noted that in his training and experience some people involved in illegal activity may try to obstruct their license plate through various means.

Sgt. Nemeth exited his patrol vehicle, and when he was approximately 15 feet from the rear of the vehicle, he saw it was bearing Colorado license plate 878XBI.

Upon approaching the vehicle, Sgt. Nemeth noticed there were multiple suitcases, bags, and a yellow box in the rear of the vehicle.

Sgt. Nemeth also noticed that there was road grime or dirt all over the exterior of the vehicle that, according to Sgt. Nemeth's training and experience, was indicative of lengthy highway travel. Sgt. Nemeth similarly noticed there was a white substance all over the vehicle which, based on his training and experience, Sgt. Nemeth believed was sodium chloride, a substance used in the Midwest to assist with de-icing the highways for safer vehicle travel.

The driver verbally identified himself as Kite Finds The Feather. He verbally provided Sgt. Nemeth with his California driver's license number, which he stated was B5969452. He said he did not have a license in his possession.

The front passenger (and the only other occupant in the vehicle) identified himself as Deandre Dantzler and provided his California driver's license to Sgt. Nemeth.

Kite stated the vehicle was a rental when Sgt. Nemeth asked for the vehicle information. He said his girlfriend rented it and he did not have the rental agreement. Based on Sgt. Nemeth's training and experience, he indicated that people involved in illegal activity may avoid providing their rental agreement for a vehicle because it can provide details related to the travel of the vehicle and the circumstances of how it was rented.

Sgt. Nemeth asked Kite to exit the vehicle, and the officer showed him how the license plate was covered with debris. Kite responded that he cleaned it when he attempted to clean the rear window.

Sgt. Nemeth and Kite moved back towards the WCS officer's patrol car so the officer could complete a wants and warrants check and issue a warning citation.

While completing those tasks, Sgt. Nemeth continued his discussion with Kite. Kite said he was coming from the "Other side of Reno" and stated he did real estate. When asked where he did real estate, Kite stated "All over." He then stated in Las Vegas and California.

Kite said he was in Reno for, "uh, I'd say, probably over a week."

/ / /

2

Sgt. Nemeth then asked Kite where he stayed while in Reno and he said, "My girlfriends house, uh his girlfriend's house," referring to Dantzler.

Sgt. Nemeth asked for a cover unit.

Sgt. Nemeth asked Kite where Dantzler's girlfriend lived, and Kite said "Downtown."

Sgt. Nemeth asked what they did while in Reno and Kite said real estate and auctions. He went on to say they did pre foreclosures as well. When Sgt. Nemeth asked where, Kite said, "All over."

Kite told Sgt. Nemeth that he did not have a real estate license in Nevada because he did auctions.

Kite told Sgt. Nemeth that he lived in Willits, California. Through his training and experience, Sgt. Nemeth knew there was an active illegal marijuana trade in Willits that involved bulk transfers.

WCS Deputy Grulli arrived on scene and took over the warning citation while Sgt. Nemeth continued to talk with Kite.

Kite stated Dantzler lived in Sacramento, California but worked for him. Kite stated Dantzler worked for him for "Years."

Kite explained they were looking for houses in Reno that had a "Notice of Default" and "Notice of Justice." He said they would drive around and knock on doors when they saw them and ask the homeowner why they were foreclosing on their house. He said he would then offer their services.

Kite then stated he goes to the counties he is in and gets a list of foreclosures. Sgt. Nemeth asked if he did that while he was in Reno and Kite said he did. Sgt. Nemeth asked what county in Reno, and Kite responded, "The one here in Reno."

Kite started listing counties in California and explained that his private real estate business covered "Basically" all the counties down to San Diego, California. Sgt. Nemeth interrupted him and asked again what county in Reno he did this work in. Kite responded / / /

that he did not go to the county and now stated he used an app called "Property Radar" on his phone to find out what homes were foreclosing.

Next, Sgt. Nemeth spoke with Dantzler. Dantzler stated they were coming from "All around." He then specified Washoe County. Dantzler told Sgt. Nemeth he was training. He said they would look for houses where the owner was behind on payments and that they get lists from the counties that provide that information. Sgt. Nemeth asked him if he got the list in Washoe, and Dantzler responded, "He did," referring to Kite.

At that point, while talking to Dantzler, Washoe County dispatch advised Sgt. Nemeth that Kite has a suspended or revoked driver's license out of California.

Sgt. Nemeth asked Dantzler how long they had been in Reno, and he said, "I don't know, maybe a day."

Sgt. Nemeth then asked Dantzler to exit the vehicle and asked to pat him down. Dantzler gave Sgt. Nemeth permission to do so. Sgt. Nemeth noticed Dantzler's wallet was in his front right pants pocket and that it looked "big/fat."

Sgt. Nemeth asked Dantzler if there was anything illegal in the vehicle and Dantzler responded that there was no meth, marijuana, cocaine, heroin, guns, or large amounts of money in the vehicle.

Sgt. Nemeth asked to search Dantzler's belongings in the vehicle. Dantzler said, "My stuff" and put his hands on his chest. Sgt. Nemeth and Dantzler were talking away from anyone in the immediate area. Sgt. Nemeth asked him again and he said, "My stuff" and said they had a lot of bags. He then said that Sgt. Nemeth could search.

Sgt. Nemeth also asked to see Dantzler's wallet because it was very big. Dantzler opened it and Sgt. Nemeth saw numerous bills of U.S. currency inside.

Sgt. Nemeth met back with Kite and asked him if there was anything illegal in the vehicle. He asked if there was meth, cocaine, heroin, or marijuana, and Kite said "no" to each individually, as asked by Sgt. Nemeth. When Sgt. Nemeth asked if there were any large amounts of money, Kite was delayed in his answer and then said, "No, I'm, I'm, I'm

/ / /

4

not gonna go." He then said there was nothing in the vehicle and he did not consent to a search, even though Sgt. Nemeth had not asked him to search.

During his contact with the occupants, Sgt. Nemeth noticed the following indicators of possible criminal activity through his training and experience:

    a. Dirty license plate;

    b. Highway grime/possible sodium chloride from Midwest not consistent with travel plans;

    c. No license or identification in possession for driver;

    d. Suspended or revoked license;

    e. Third-party rental;

    f. Oversized rental;

    g. Vagueness with stay in Reno for over a week;

    h. Vague on employment;

    i. Self-employed/owner of real estate company without a license;

    j. Nervousness that did not subside;

    k. Travel plans between occupants inconsistent with each other;

    l. Avoiding questions when asked;

    m. Appeared to be making up story as questions were asked; and

    n. Delaying answers

Sgt. Nemeth took back over the warning citation and asked Dep. Grulli to complete a free air sniff with his Police Service Dog, K9 Jett. Dep. Grulli completed the free air sniff with K9 Jett and K9 Jett gave a final alert to the odor of narcotics coming from the vehicle. K9 Jett is certified for narcotics detection.

Nevada State Highway Patrol Trooper, Sergeant Brown (NHP Trooper Brown), then arrived on scene and stood by with Kite and Dantzler.

Sgt. Nemeth paused the warning citation and explained to Kite and Dantzler that the positive alert from K9 Jett, along with other indicators observed, provided probable

/ / /

cause to search the vehicle. Sgt. Nemeth again asked about the list of drugs, guns, and large amounts of currency being in the vehicle with Kite and Dantzler. Kite said no to all.

Sgt. Nemeth conducted a search of the vehicle. Sgt. Nemeth opened the side sliding door of the van and saw the yellow box was a heat-sealing machine from Cabela's. Sgt. Nemeth also observed another box underneath the heat-sealing machine box containing multiple rolls of unused heat-sealing bags. Through Sgt. Nemeth's training and experience, heat sealing machines and bags are commonly used to package bulk marijuana on the black market.

Sgt. Nemeth located a large suitcase inside the right side of the sliding door area. He took the suitcase out of the van to put on the ground to search it and saw it had a locked TSA-style lock on the main compartment of the bag. He asked Kite for the combination, but Kite refused to give it to Sgt. Nemeth. Sgt. Nemeth then utilized his handcuff key to open the suitcase by sticking it between the teeth of the zipper, which in-turn, opened the bag without damaging it.

Sgt. Nemeth found a white and red plastic commercial store type bag containing bulk currency inside the suitcase. The currency was packaged in bundles which looked like similar amounts. The bundles were separated by rubber bands. Through Sgt. Nemeth's training and experience, the packaging of the currency was consistent with drug-trafficking methods.

Sgt. Nemeth then contacted the DEA and Agent Ruiz stated he would respond for a joint investigation.

Sgt. Nemeth requested a criminal history and dispatch advised that Kite had a lengthy criminal history, which includes possession and distribution of marijuana.

Dispatch also advised that a criminal history search on Dantzler showed he also has a lengthy history of drug-related charges, including possession and selling of multiple types of drugs.

Sgt. Nemeth met back with Kite, who now stated he had that money because of doing real estate auctions. Kite asserted that it was his money and he did not tell Sgt.

Nemeth about it when asked because he did not know the laws in each state. He claimed it was not illegal to have that much money.

Sgt. Nemeth asked Kite if he was a licensed money courier and Kite responded that he was not. Kite claimed it was his money again and he used it to pay cash at house auctions on the courthouse steps. Kite stated that he utilized banks, but the auctions needed cash.

Kite claimed the total amount of the currency was $160,000.

Sgt. Nemeth met back with Dantzler, who stated he did not have any large amounts of money. He also stated he did not know Kite had the bulk currency in the vehicle.

Inside the vehicle, a black jacket that belonged to Dantzler contained bulk currency in each side pocket that Dantzler claimed was $6,000.

Sgt. Nemeth and other officers continued the search after notifying the DEA. Inside the above-mentioned suitcase was a black computer bag that was locked as well. It was opened without damage and contained two computers along with a maroon bag containing an unknown amount of bundled cash. There were also multiple thumb drives in the computer case.

During the search, the officers also found a wallet belonging to Kite that contained approximately $200 in cash.

Through Sgt. Nemeth's training and experience, it is common for illegal drug trafficking couriers to have a small amount of spending money in their wallet (e.g., the $200), a payment for transportation of the currency (e.g., the maroon bag), and the overall bulk currency that they are transporting (e.g., the $160,000 in the shopping bag).

Agent Ruiz completed a bulk currency questionnaire with Kite.

During Agent Ruiz's conversation with Kite, Kite informed the Agent that he was in Reno looking for real estate. Agent Ruiz asked him what properties he was looking at and Kite was unable to provide any specific information related to properties he was looking at.

/ / /

7

Kite told Agent Ruiz that he had withdrawn the $160,000 from his business bank account back in May 2020 (i.e., over two-and-a-half years prior to the traffic stop).

Agent Ruiz asked Kite if he always carried large amounts of cash and Kite replied "yes."

Kite indicated to Agent Ruiz that his realtor business was his sole source of income.

A short time later, Homeland Security Investigations Agent Lux arrived on scene and met with Dantzler. Agent Lux completed a bulk currency questionnaire with Dantzler.

During Agent Lux's conversation with Dantzler, Dantzler indicated he was learning real estate from Kite, and they had been in Reno for 3-4 days.

Dantzler told Agent Lux that they "stayed with a friend" while in the Reno area but did not offer the name of the friend to the Agent.

Dantzler indicated to Agent Lux that, at the time, he worked as a hibachi chef and had an annual salary of approximately $40,000. He does not have a bank account and cashes his paychecks.

NHP Troopers Perthel and Tumanuvao then arrived on scene. Dep. Grulli took the bulk currency in the shopping bag and moved it to the side of the highway for an open area search. The search area contained bushes, trash, and other debris.

NHP Trooper Perthel completed a search with his Police Service Dog, K9 Duke. K9 Duke located the bulk currency in the open search area and gave an alert to the odor of narcotics coming from the currency. K9 Duke is certified for narcotics detection.

WCS Lt. Zirkle arrived on scene and contacted Enterprise Rental. It was found during that contact that Alicia Kepple rented the vehicle on January 5, 2023, in Ukiah, California with 58,462 miles on the vehicle. When Sgt. Nemeth stopped the vehicle, it had 66,441 miles on the vehicle, which indicated that 7,979 miles were put on the vehicle during the rental period of 19 days. It was also found that the return date for the rental was January 25, 2023, in Ukiah.

Upon completion of the questionnaires by both agents, it was decided by them to seize the currency pending federal forfeiture proceedings.

Agent Ruiz and Agent Lux packaged the currency in multiple sealed bags. In one bag was the bulk currency and the currency that was in the maroon bag, all of which Kite claimed. There were also two laptop computers, three cellphones, and four miscellaneous thumb drives seized. In another bag was the currency that was in Dantzler's jacket. All items were packaged in front of Kite and Dantzler and they were provided a receipt for all items seized by the DEA.

On January 25, 2023, when Agent Ruiz and Agent Lux brought the currency to Loomis for official counting, the Loomis employee commented to the agents about the strong smell of marijuana coming from the currency.

The breakdown of the currency was as follows:

    a.  $100    x    524    =    $52,400

    b.  $50    x    179    =    $8,950

    c.  $20    x    5,013    =    $100,260

    d.  $10    x    156    =    $1,560

    e.  $5    x    66    =    $330

**II. PROCEDURE**

On August 29, 2023, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the $163,500 in U.S. Currency (defendant property):

    a.  is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

    b.  is all proceeds traceable to all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

c.  is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

d.  is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense and is subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(C).

On August 30, 2023, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 3, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 4.

Pursuant to the Order, ECF No. 3, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Complaint, ECF No. 1, the Order, ECF No. 3, the Summons and Warrant, ECF No. 4, and the Notices of Complaint for Forfeiture, ECF Nos. 5, 9, 10. Notice was published according to law, ECF No. 9.

Under Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons or entities interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury under 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice was sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R.

10

Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on Misty L. Dante, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 3; Summons and Warrant, ECF No. 4; and Notices of Complaint, ECF Nos. 5, 10.

On September 5, 2023, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 5.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from September 9, 2023, through October 8, 2023. Notice of Filing Proof of Publication, ECF No. 9.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Jooblay, Inc., by regular and certified return receipt mail Notice of Filing Service of Process – Mailing (NOFSOP – Mail), ECF No. 10-1, p. 3, 7-31.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Jooblay, Inc., c/o Kite Isaac Finds The Feather, Registered Agent, by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 3, 7-27, 32-34.

On September 13, 2023, the United States Attorney's Office attempted to serve the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and

11

Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Kite Isaac Finds The Feather and Jooblay, Inc., at Fort Bragg, CA, by regular and certified return receipt mail. The regular mail and certified mail were both returned as not deliverable as addressed and unable to forward. NOFSOP – Mail, ECF No. 10-1, p. 3, 7-27, 35-37.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Jooblay, Inc., c/o Harvard Business Services, Inc., Registered Agent, by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 3, 7-27, 38-40.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Kite Isaac Finds The Feather at Los Angeles, CA, by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 3-4, 7-27, 41-43.

On September 13, 2023, the United States Attorney's Office attempted to serve the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Kite Isaac Finds The Feather at Willits, CA, by regular and certified return receipt mail. The regular mail and certified mail were both returned as unclaimed and unable to forward. NOFSOP – Mail, ECF No. 10-1, p. 4, 7-27, 44-46.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on James P. Wohl, Attorney for Jooblay, Inc. and/or Kite Isaac

/ / /

Finds The Feather, at the Law Office of James P. Wohl by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 4, 7-27, 47-49.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Jooblay, Inc. and/or Kite Isaac Finds The Feather, c/o James P. Wohl, at the Law Office of James P. Wohl by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 4, 7-27, 50-52.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Deandre Tyron Dantzler (Danztler) by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 4, 7-27, 53-55.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Alicia Kepple / Alicia Casey by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 4, 7-27, 56-58.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on EAN Holdings LLC / Enterprise Car Rental, c/o CT Corporation System, Registered Agent, by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 4-5, 7-27, 59-61.

On September 13, 2023, the United States Attorney's Office served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on Enterprise Car Rental, c/o Enterprise Holdings, Attn: Legal

Dept., by regular and certified return receipt mail. NOFSOP – Mail, ECF No. 10-1, p. 5, 7-27, 62-64.

On October 6, 2023, Kite Isaac Finds The Feather, as Pro Per, filed an Answer and Affirmative Defenses to the Civil Complaint for Forfeiture, and a Certificate of Service. ECF Nos. 6, 7.

On October 23, 2023, the United States filed a Motion to Conditionally Strike the Answer for Failing to Comply with Supp. R. G(5), ECF No 12.

On October 27, 2023, Kite Isaac Finds The Feather, as Pro Per, filed a Claim, ECF No. 13, re-filed his Answer, ECF No. 14, and filed an Opposition to the Government's Motion to Conditionally Strike Answer, ECF No. 15. He also followed up with mailed copies of the same documents to the Court Clerk and Reno Public Docket Inbox, ECF Nos. 16, 17, 18.

On November 3, 2023, the United States filed their Reply to Claimant's Opposition, ECF No. 19. Claimant then filed a Response to the Government's Reply, ECF No. 20, on January 4, 2024.

On March 25, 2024, this Court denied the Strike Motion and deemed Claimant's Claim as timely filed *nunc pro tunc*, ECF No. 22.

On November 13, 2025, the United States filed a Stipulation between the United States of America and Kite Isaac Finds The Feather, and Order, regarding the $163,500 in US Currency. Claimant waived, among other things, service of process. Stipulation, ECF No. 55.

On November 14, 2025, the Court entered the Order granting the Stipulation as to Kite Isaac Finds The Feather, ECF No. 56.

No other person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

On November 17, 2025, the United States filed a Motion for Entry of Clerk's Default against the $163,500 in US Currency, Jooblay, Inc., Deandre Tyron Dantzler (Danztler), Alicia Kepple / Alicia Casey, EAN Holdings LLC, Enterprise Car Rental,

14

Enterprise Holdings, and all persons or entities who may claim an interest in the defendant property in the above-entitled action, except for Kite Isaac Finds the Feather. Motion for Entry of Clerk's Default, ECF No. 59.

On November 18, 2025, the Clerk of the Court entered a Default against the $163,500 in US Currency, Jooblay, Inc., Deandre Tyron Dantzler (Danztler), Alicia Kepple / Alicia Casey, EAN Holdings LLC, Enterprise Car Rental, Enterprise Holdings, and all persons or entities who may claim an interest in the defendant property in the above-entitled action, except for Kite Isaac Finds the Feather. Entry of Clerk's Default, ECF No. 60.

Deandre Tyron Dantzler (Danztler) is not in the military service within the purview of the Servicemembers Civil Relief Act. Motion for Entry of Clerk's Default, ECF No. 59-2, Exhibit 1, p. 3-6.

Alicia Kepple / Alicia Casey is not in the military service within the purview of the Servicemembers Civil Relief Act. Motion for Entry of Clerk's Default, ECF No. 59-2, Exhibit 2, p. 8-11.

Deandre Tyron Dantzler (Danztler) is neither a minor nor an incompetent person.

Alicia Kepple / Alicia Casey is neither a minor nor an incompetent person.

## III. THE REQUIREMENTS FOR DEFAULT WERE MET

### A. Legal Standard

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

15

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

**B.  The Forfeiture Requirements for Default Were Met.**

a.  Judgment Sought

Under Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

b.  Default and Entry of Default

As shown above, the United States requested entry of Clerk's Default against the $163,500 in US Currency, Jooblay, Inc., Deandre Tyron Dantzler (Danztler), Alicia Kepple / Alicia Casey, EAN Holdings LLC, Enterprise Car Rental, Enterprise Holdings, and all persons or entities who may claim an interest in the defendant property in the above-entitled action, except Kite Isaac Finds the Feather, ECF No. 59. The Clerk entered the Default as requested, ECF No. 60.

/ / /

16

c. Notice

Under Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 9. Under Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. ECF No. 10.

d. Legal Sufficiency of the Complaint

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the defendant property with reasonable particularity. The Complaint stated where the seizure of the defendant property occurred and its current location. The Complaint identified the statutes under which the forfeiture action has been brought. The Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Supp. R. G(2); ECF No. 1.

e. Status of Potential Claimants

Kite Isaac Finds The Feather has entered into a Stipulation with the United States, ECF No. 55. On November 14, 2025, the Court entered the Order granting the Stipulation as to Kite Isaac Finds The Feather, ECF No. 56.

No other person or entity has filed a claim, and the time to file a claim has passed.

**C. The Civil Requirements for Default Were Met.**

a. The Plaintiff Would be Prejudiced Without a Judgment

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested by Jooblay, Inc., Deandre Tyron Dantzler (Danztler), Alicia Kepple / Alicia Casey, EAN Holdings LLC, Enterprise Car Rental, and Enterprise

Holdings. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) (brackets added), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

b. & c. The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Complaint sufficiently alleges the facts of the case.

d. The Amount of Money at Stake

The value of the defendant property was clearly established in the Complaint, ECF No. 1, and the defendant property is forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.

*United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the alleged tainted currency related to a completed or contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.,* and proceeds traceable to the violations.

e. There Are No Possible Disputes of Material Fact

No issues of material fact exist, and the allegations of the Complaint are established as a matter of law. The defendant property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance

18

or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

b. is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

f. <u>Default Was Not the Result of Excusable Neglect</u>

The record shows that potential claimants were properly served with the Complaint, Order, Summons and Warrant, and the Notice and failed to file a claim and an answer to the Complaint. There is no evidence of excusable neglect.

The record shows that the Claimant was properly served with the Complaint, Order, Summons and Warrant, and the Notice. As a result, the Claimant filed a claim, filed an answer to the Complaint, and agreed to a Stipulation with the United States that this Court granted. There is no evidence of excusable neglect.

/ / /

/ / /

/ / /

19

g. Public Policy Does not Prevent Default Judgment

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the potential claimant**s** did not file a claim and an answer to the government's Complaint. The Claimant did file a claim and an answer to the Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.

*Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

Denying the government's Motion would not further public policy. While cases should be decided on the merits when possible, the potential claimants have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California*, 2018 WL 3429669, at *2.

**IV. JUDGMENT**

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to Jooblay, Inc., Deandre Tyron Dantzler (Danztler), Alicia Kepple / Alicia Casey, EAN Holdings LLC, Enterprise Car Rental, Enterprise Holdings, and all persons or entities who may claim an interest in the defendant property, except Kite Isaac Finds the Feather; and a Final Judgment of Forfeiture as to $163,500 in US Currency and Kite Isaac Finds the Feather.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Default Judgment of Forfeiture is entered against Jooblay, Inc., Deandre Tyron Dantzler (Danztler), Alicia Kepple / Alicia Casey, EAN Holdings LLC, Enterprise Car Rental, Enterprise Holdings, and all persons or entities who may claim an interest in the defendant property in the above-entitled action, except Kite Isaac Finds the Feather.

/ / /

20

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Final Judgment of Forfeiture is entered against the $163,500 in US Currency and Kite Isaac Finds the Feather.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Kite Isaac Finds the Feather forfeited all possessory rights, ownership rights, and all rights, titles, or interests in the property to the United States.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the United States will release to Kite Isaac Finds the Feather one payment of $81,750 with interest less any debt owed to the United States, any agency of the United States, or any debt in which the United States is authorized to collect, through Jacek W. Lentz's IOLTA account.

IT IS HEREBY CERTIFIED, under 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

DATED: January 27, 2026